IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

UNITED STATES OF AMERICA,

    Plaintiff,      No. 2:12-mj-0226 GGH

  vs.

ADOLFO GILBERT PAREDES VIGIL,  ORDER CERTIFYING EXTRADITION

    Defendant.

_____/

*Introduction and Summary*

    The extraditee in this case, Adolfo Gilbert Paredes Vigil ("Vigil"), seeks to have this court not certify him to the Secretary of State for extradition to Sweden on account of his conviction for financial crimes in that country. See 18 U.S.C. § 3184. Vigil takes a weak swing at alleging fundamental due process errors in his conviction, but rests his primary argument on the assertion that he would be tortured if sent back to Sweden to serve his prison sentence. He would not, as he argues, be tortured by the Swedish government *per se*, but rather by members of a prison gang working on behalf of persons on the outside who are antagonistic to him for personal/business reasons. He then asserts that the Swedish government is powerless, either by design or ineptitude, to counteract the gang actions.

\\\\\

1

1    For the reasons set forth herein, the undersigned certifies Vigil's extradition to

2 Sweden. Vigil may not challenge a conviction on the grounds that there is not probable cause for

3 extradition.  Moreover, this court has no jurisdiction in an extradition proceeding to determine

4 whether circumstances in Sweden relative to Vigil's safety should preclude his transfer to that

5 country.  Only the Secretary of State has the authority to make such a determination.

6 *Background Facts*

7    Vigil, a native of Peru and not Sweden, went to Sweden and helped establish a

8 restaurant cleaning and dishwashing business.[1]  He was found by the Swedish government to be

9 the principal owner/manager of the business, although Vigil did have a business partner.

10 According to the Swedish government, the business had yearly revenues in excess of $1,000,000,

11 at least for a short period of time.  However, after a time, Vigil's business stopped filing

12 appropriate tax returns, including forms for a value added tax common in European countries and

13 payroll taxes.  He was alleged to have paid his employees in cash, ostensibly to avoid paying

14 required payroll taxes.

15    After investigation, including Vigil's submission of documentary evidence, Vigil

16 was convicted in June 2004 by the Stockholm City Court of bookkeeping and tax avoidance

17 crimes, specifically: Chapter 11, Section 5 of the Swedish Penal Code, Section 4 of the Tax

18 Penal Act, and section 10, para. 1 of the Tax Penal Act.  Vigil's business partner was convicted

19 of the same crimes.  His defense had essentially been that he was ignorant of the complexities of

20 Swedish law, and that whatever accounting mess suffered by his business was not his fault.  Vigil

21 had supplied a lengthy defensive statement to the Swedish authorities.

22    The precise nature of the hearing received by Vigil in the Stockholm City Court is

23 not described in the record.  However, it is clear that Vigil was present during the hearing,

24

25    [1]The facts herein are taken from the certified record supplied to the court.  Docket # 19.
Because there is no comprehensive internal pagination in that certified record, the undersigned
26 will not cite to pages.

2

however described, and he was represented by a Swedish lawyer.  See Ruling of the Stockholm City Court at page 8 referring to Vigil's " testimony" [either written or oral].  See also Ruling at page 10: "Adolfo Paredes Vigil has stated the following: He came to Sweden from Peru.... [detailing a lengthy defense]."  Vigil filed an appeal, but because he had left the country for Peru before the appeal was heard, and was inexcusably not present for the appellate hearing, the appeal was denied (April 2006).

After his conviction became final by virtue of the denial of appeal, and after leaving Peru, Vigil entered the United States in or about May 2006.  According to Exhibit 1 of the United States' brief filed December 3, 2012, Vigil was not lawfully in the United States as of October 31, 2012; he has been noticed to appear for a removal hearing (dated August 23, 2012).  Vigil contests the immigration status asserted by the government.

*Federal Court Proceedings*

Upon complaint and issuance of warrant in this district by the undersigned, Vigil was arrested on September 4, 2012, and brought before the undersigned on September 5, 2012 for initial appearance on extradition proceedings.  Petitioner was represented by attorney Daniel Karalash.  Because Mr. Karalash was new to the case and needed to be apprised of the facts in order to decide whether to contest a certification of extradition, an extradition hearing was set for October 3, 2012.  By two stipulations and orders filed by Mr. Karalash, who requested further time to prepare, the hearing was continued to October 31, 2012.  Prior to the time of the sought continuances, the United States had filed its memorandum concerning the requirements for Vigil's extradition.

The court anticipated that if the extradition were to be opposed, Vigil would file his reasons for non-extradition prior to the set hearing.  Based on the fact that most extraditions in this district are not ultimately opposed, no specific filing times were set.  On the day of the hearing, Vigil's attorney announced that he would indeed oppose extradition, and appeared ready to proceed to a "criminal case like trial" on October 31, 2012.  Because the grounds for

3

1    opposition were completely unknown to the undersigned, and an extradition hearing is not like a

2    criminal trial, briefing dates were set on the record, and the type of hearing, if any, would be set

3    upon receipt of the briefing.

4            After the briefing was timely received, Mr. Karalash was queried whether he

5    desired a hearing and an affirmative response was received.  Mr. Karalash requested that the

6    hearing be held on January 24, 2013.

7    *Discussion*

8            Most extradition proceedings involve situations where a person has been charged

9    with a crime, but has yet to proceed to a trial or other type dispositional proceeding in the country

10   seeking extradition.  In such a situation, the court must find that: the judicial officer is authorized

11   to conduct the extradition proceeding; the extraditee is the person who is charged with the crime,

12   i.e., the court has jurisdiction over the person[2]; the treaty of extradition is in effect; the crime

13   charged is one for which the treaty of extradition between the United States, and in this case,

14   Sweden, permits extradition; there exists probable cause to believe that the extraditee has

15   committed the charged crime(s).  See Prasoprat v. Benov, 421 F.3d 1009, 1013 (9th Cir. 2005);

16   Mainero v. Gregg, 164 F.3d 1119, 1205 (9th Cir. 1999).

17            In this case, Vigil does not contest at all the first four elements, and the court finds

18   from his non-opposition, and its own review of the record, that these elements are found.  The

19   court is unsure whether Vigil challenges the facts of the charged offenses as his main contention

20   focuses upon the assertion that he was duped by Swedish authorities into believing that they were

21   assisting him in another matter when all along they were setting him up for conviction.  More is

22   said about this contention below.  Vigil certainly does not contest the fact that he, or his

23   company, had not paid the required taxes under Swedish law.

24   \\\\\

25

26        [2]The undersigned is authorized to proceed in this Article II of the Constitution proceeding pursuant to E.D. Cal. Local Rule 302(b)(8).

1    Generally, the undersigned would explicate the standards for finding probable

2  cause, which are well established at this point.  However, such is unnecessary as a conviction is

3  dispositive of the probable cause issue.  Haxhiaj v. Hackman, 528 F. 3d 282, 290-291,and fn. 2

4  (4th Cir. 2008) (applies to even *in absentia* convictions); Sidali v. I.N.S., 107 F.3d 191, 196 (3rd

5  Cir. 1997); Spatola v. United States, 925 F.2d 615, 618 (2nd Cir. 1991); Swierzbinski v. Atty.

6  General, 2010 WL 2484216 (D. Kan. 2010).  See also Restatement (Third) of the Foreign

7  Relations Law of the United States § 476 comm. b (1987)("With respect to persons whose

8  extradition is sought after conviction in the requesting state, the [probable cause] requirement is

9  met by proof of the judgment of conviction and, where appropriate, of sentence.")

10    Therefore, all of the requirements for extradition have been met.

11    Vigil raises two contentions to oppose extradition.  He first recounts the assertion

12  that he was duped into incriminating himself, and ultimately being convicted.  He also contends

13  that extradition back to Sweden would amount to torture given his special circumstances.

14    With respect to the first assertion, Vigil describes the start-up of his business and

15  his being caught in the extortive web of Yugoslavian gang members with respect to that business,

16  which originated with his relationship with a woman associated by relation with some of those

17  gang members.  Vigil describes his fear of the gang members, his attempts to persuade the police

18  that he was being extorted, and his eventual flight to Peru (prior to his trial proceeding) to evade

19  his alleged tormentors.  He continues as follows:

20    Adolfo [hereafter Vigil in the quote] was in a quandary; if we went back [to
     Sweden] and the police tipped off Angelo [one of the Yugoslavian gang members

21    and brother of his then girlfriend], he was in mortal danger; on the other hand, if
     he did not go back, all his savings and loans were sure to be lost....

22

23    Almost immediately upon his return, Angelo and the Yugoslavian gang members
     met Vigil.  Without warning Vigil as promised, Swedish law enforcement brought
     Angelo in for questioning regarding Vigil's allegations [causing Vigil to be

24    further abused by the gang]....

25    After 6 months of failure to protect Vigil, Swedish authorities brought Vigil in for
     more information regarding Angelo and the organized crime gang.  When Vigil

26    became too terrified of Angelo to further cooperate, Vigil was subject to

5

1    questioning about his company's finances.  Vigil was specifically asked why he
2    was *negligent* in his record keeping. [citations omitted].

3    Vigil expressed outrage and amusement as to the line of questioning.  Vigil was
     being held, in what he believed was protective custody......

4    Instead, Vigil was brought to a small conference room.  In the conference room
     was Kiam Anderson (DA), Vigil's attorney, and three other unknown people.
5    Vigil was questioned regarding his business of all things.  Vigil was never
     informed that he was in trial for financial crimes.  Vigil did not even recognize
6    this conference room meeting as anything regarding any trial he had ever seen or
     heard before.  Vigil was somehow convicted and released the same day without
7    ever having been made aware of the conviction. [One can validly wonder,
     however, what role Vigil's attorney played in advising him]
8
     As soon as Vigil returned from his time in "protective custody" Angelo and his
9    goons once again greeted him. [citation omitted] After making it back from what
     was the start of another round of extortion, Vigil escaped to Peru and eventually
10   the United States.

11   Vigil Opposition to Extradition, at 5-7.

12            While Vigil's assertions may could have been grounds for a finding of no liability,

13   or mitigation in sentencing, and certainly the subject matter of appeal, the above cited case law

14   does not permit the undersigned to go behind the conviction, and retry the matter.  What might

15   have happened on appeal will forever remain unknown, and Vigil's flight after conviction caused

16   a forfeiture of appeal.

17            Based on the above allegations, and much evidence in the way of Vigil's

18   declaration as well as exhibits received at hearing, Vigil sincerely believes his life will be

19   endangered if sent back to Sweden on account of the pervasiveness of the Yugoslavian gang

20   system both in and out of prison.  He further alleges that the Swedish authorities are incompetent

21   at best, complicit at worst, in protecting ordinary persons from the gang tentacles.  The

22   undersigned makes no finding on those assertions because the law precludes the undersigned

23   from stopping extradition based on allegations of torture or inhumane treatment.

24            As held in Trinidad y Garcia v. Thomas, 683 F.3d 952 (9th Cir. 2012) (en banc),

25   the undersigned has no authority to rule on torture allegations.  If relief is to be granted from such

26   conditions, it is *only* the Secretary of State who can make a decision on the merits of the request.

1   The only jurisdiction a federal court possesses lies in habeas corpus and concerns a failure of the

2   Secretary to exercise her discretion at all when faced with a request to be relieved of extradition

3   (after a district court certifies the extradition in the first instance) on account of inhumane

4   conditions in the country seeking extradition.  Once that discretion is exercised, a federal court

5   has no authority to review the exercise of that discretion.  Id. at 956-957.

6   *Conclusion*

7            For the reasons set forth herein, the undersigned certifies to the Secretary of State

8   the extradition of Adolfo Gilbert Paredes Vigil.  The Secretary of State shall act in accordance

9   with 18 U.S.C. § 3186, keeping in mind the time limitations set forth in 18 U.S.C. § 3188.

10           The Clerk shall close this miscellaneous matter.

11  DATED: January 24, 2013

12
                                /s/ Gregory G. Hollows
13                      UNITED STATES MAGISTRATE JUDGE

14
    vigil.extradition
15

16

17

18

19

20

21

22

23

24

25

26

                                    7